UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **David Heldreth**<br><br>Plaintiff,<br><br>v.<br><br>**MERRICK B. GARLAND, in his official capacity as U.S. Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, ANNE M. MILGRAM, in her official capacity as Administrator of the Drug Enforcement Administration, UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, JOHN J. MULROONEY II, in his official capacity as an Administrative Law Judge of DEA,**<br><br>*Defendants*. | CASE NO. 2:24-cv-1817-KKE |

**COMPLAINT AND REQUEST FOR**

**DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff David Heldreth (DH) by this complaint against the United States Department of Justice, Attorney General Merrick B. Garland, the Drug Enforcement Administration, its Administrator Anne M. Milgram, and its Administrative Law Judge John J. Mulrooney II, allege as follows:

1

# INTRODUCTION

1. This action for an injunction, injunctive and declaratory relief arises from the Defendants' actions which: a. violate Executive Order 13175 and the sovereignty of Native American tribes and tribal organizations and businesses, b. violate the Regulatory Flexibility Act and Small Business Regulatory Enforcement Fairness Act (SBREFA), c. illegally and punitively exclude David Heldreth (DH) and the company he owns stock in Panacea Plant Sciences (PPS) from proceedings on marijuana before a DEA administrative law judge (ALJ) as a punishment for challenging DEA rule-making and other legal activities, and d. The current ALJ assigned to the hearing process is unconstitutionally appointed and placed and has unconstitutional protections from removal.

2. In more detail, there are 4 illegal actions occurring by the DEA which need to be addressed:

    a. The DEA/DOJ incorrectly assert that there is no tribal implications under Executive Order 13175. The agencies thus did not conduct required tribal consultations prior to rule-making. The rule-making should be withdrawn or struck down until proper tribal consultation has taken place under law.

    b. The DEA/DOJ incorrectly assert that there was no small organization impact requiring the Regulatory Flexibility Act and Small Business Regulatory Enforcement Fairness Act (SBREFA) requirements to be followed. The rule-making should be withdrawn or struck down until the RFA and (SBREFA) have been followed and proper small organization consultation has taken place under law.  Amendments to the Regulatory Flexibility Act in 1996 as part of the Small Business Regulatory Enforcement Fairness Act (SBREFA) (110 Stat. 857, 5 U.S.C. §601 note) permit judicial review regarding, among other things, agencies' regulatory flexibility analyses for final rules and any certifications that their rules will not have a significant impact on small entities. As a result, a small entity that is adversely affected or aggrieved by an agency's determination that its final rule would not have a significant impact on small entities can seek judicial review of that. In granting relief, a court may remand the rule to the agency or defer enforcement against small entities.
    c. The DEA administrator has blocked DH from participation in the DEA administrative law hearing on marijuana rule-making in an attempt to punish them

2

  for their legal actions against her and the DEA. While simultaneously DEA administrator selected groups for a DEA hearing which even the current DEA Administrative Law judge is challenging the standing of.

  d. The DEA ALJ are unconstitutionally appointed and placed, and have unconstitutional protections from removal.

3. From 2021-2024(5) DH have been engaged in legal battles with the DEA and DOJ. These include instances in which records have shown what appears to be illegal and unconstitutional actions from the DEA administrator Anne Milgram. As such DH specifically asked for previous DEA hearings to be ended until she was no longer in the position as head of the agency. ALJ's similarly found concern with the DEA actions, which we will discuss in more detail later in the filing.

4. DH actions to increase public access of DEA actions and legal actions to stop DEA rule-making has created an obvious bias from the DEA administrator. The DEA administrator has now acted in ways that appear to punitively punish DH.

5. On May 21, 2024 Defendants DEA and DOJ issued a rule-making notice to move marijuana into Schedule 3 and requested public comment and requests for a hearing. DH submitted comments and requests for hearing before the deadline under the DEA and DOJ rule-making.

6. On August 29, 2022, DEA announced a public hearing for Dec. 2, 2024, and opened requests for hearing again with a deadline of September 30, 2024.

7. On September 16, 2024, DH each submitted requests for a hearing which outline each of the requirements from the DEA filing.

8. On October 28, 2024, DEA administrator Anne Milgram submitted a list of 25 people and organizations to be included in the hearing. This list of participants selected by Milgram did not include PPS or DH, but also didn't include a single Native American tribe, individual or organization, and additionally no group from a marginalized

3

community. None of the selected individuals are challenging the DEA process under any of the named reasons that DH has. However, Milgram instead selected those without apparent standing.

9. On October 31, DEA Chief Administrative Law Judge sent an order to the 25 and the DEA saying that DEA did not follow the requirements for the hearing and ordering additional information to be provided including proof that the parties are harmed or aggrieved by the rule-making. (Exhibit 1)

10. DH move accordingly for all necessary relief to enjoin the DEA's administrative action regarding the ALJ proceedings for marijuana, including a temporary injunction preventing DEA or DEA ALJ Mulrooney from continuing the ALJ proceedings while this case is heard, an immediate stay of the ALJ proceedings, as well as any scheduling of marijuana until the defects in its enforcement regime surrounding tribal consultation, small business/organization consultation, as well as DEA including DH and PPS in the marijuana rule-making proceedings and other issues can be remedied.

## PARTIES

11. Plaintiff David Heldreth is Pro Se self-representing in this case. He is a shareholder in Panacea Plant Sciences is a medical research company which is incorporated in Washington State and has main offices in Bellevue, Washington. Founded in 2017, the company has focused much of its research around compounds with activity on the cannabis plant, cannabinoid receptors and related biological systems. The company is developing therapies and IP which involve marijuana and related drugs.
Additionally DH is a medical cannabis patient/user, and patent holder on marijuana-related technologies. He also resides in Bellevue, Washington. His family is Cherokee.

12. Defendant Merrick B. Garland is named in his official capacity as the Attorney General of the United States. By statute, the Attorney General has the authority to enforce the CSA. The Attorney General has delegated relevant enforcement authority to the DEA

Administrator. See 28 C.F.R. § 0.100. The address of the Office of the Attorney General is 950 Pennsylvania Avenue NW, Washington, DC 20530.

13. Defendant United States Department of Justice is an executive department of the United States. See 5 U.S.C. § 101; 28 U.S.C. § 501. The head of the Department of Justice is the Attorney General. See 28 U.S.C. § 503. The address for the DOJ is 950 Pennsylvania Avenue NW, Washington, DC 20530.

14. Defendant Anne M. Milgram is named in her official capacity as the Administrator of the DEA. The Attorney General's authority to enforce the CSA has been delegated to her. See 28 C.F.R. § 0.100. The Address of the Office of DEA Administrator is 8701 Morrissette Drive, Springfield, Virginia 22152.

15. Defendant Drug Enforcement Administration is a component of the United States Department of Justice. The DEA was created by Executive Order 11,727. 38 Fed. Reg. 18357 (July 10, 1973). It has jurisdictional authority across the United States. The address for the DEA is 8701 Morrissette Drive, Springfield, Virginia 22152.

16. Defendant the Honorable John Mulrooney is an ALJ of DEA. He is sued in his official capacity. The address for the DEA is 8701 Morrissette Drive, Springfield, Virginia 22152.

**Jurisdiction and Venue**

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1346 because this action arises under the Constitution and laws of the United States concerning commercial regulation. The United States has waived its sovereign immunity from this lawsuit in 5 U.S.C. § 702.

18. This action arises under Article II of the United States Constitution and the Declaratory Judgment Act. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the action arises under the laws of the United States.

19. Venue is proper in this district under 28 U.S.C. § 1391(e) because (i) one or more Defendants is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or is an agency of the United States, or is the United States and (ii) Plaintiff resides in this District.

## STATEMENT OF CLAIMS
## FACTUAL ALLEGATIONS

20. DEA files Federal Register notice on controlled substances manufacturing quotas on September 2, 2021. https://www.federalregister.gov/documents/2021/09/02/2021-18935/proposed-adjustments-to-the-aggregate-production-quotas-for-schedule-i-and-ii-controlled-substances

21. On September 3, 2021, Panacea Plant Sciences and David Heldreth contacted the DEA after the DEA submitted Docket 688A to the Federal Register on levels of controlled substance manufacturing on September 2, 2021. The Federal Register listing indicated that a Regulations.gov website was live for comments on the government action. This is required under administrative law. PPS made the contact to alert the DEA that the phone number and email which was provided for contact regarding the rule-making was incorrect and was not being returned or answered. For 2 weeks approximately the DEA still did not correct the errors and so PPS contacted them repeatedly. However, PPS also contacted Regulations.gov and was told that in fact the Regulations.gov team could not fix the error or make the pages live for comment as only the DEA was in charge of this and that DEA was well aware of their control of this feature. In response PPS alerted the DEA to this issue and DEA still did not have the comment page operational for more than 24 hours.

22. Then September 17, 2021, Panacea Plant Sciences published a press release informing the public of these facts in order to increase public comment and requests for DEA action to make the comment page live. With no surprise, once public was made aware of DEA blatant and willful negligence of following administrative law the DEA somehow was able to make the page live for viewing within next 12 hours. However, even after DEA made public listing for Docket 688A the agency did not immediately turn on comments and took another day to do so. The text of the press release PPS released can be found here: https://www.einnews.com/pr_news/551479837/panacea-plant-sciences-submits-comments-on-psychedelics-cannabis-to-dea.

23. During this time members of DEA staff were dismissive and aggressive regarding the situation in verbal communication on calls.

24. PPS filed a variety of FOIA requests on November 4, 2021 on DEA records related to DEA drug scheduling actions. The agency declined the FOIA request on December 3, 2021. This appears to be in response and retaliation for my activity which exposed DEA attempt to subvert administrative process and reduce public comment in order to more easily push through their goals with less public awareness or activity against them.

25. Panacea Plant Sciences was/is working on biosynthetic pathway development regarding the use of yeast and bacteria for the creation of therapies 4-OH-DiPT, 5-MeO-AMT, 5-MeO-MiPT, 5-MeO-DET, DiPT, DOI, DOC and other compounds with Philippe Henry and his companies which include or included Egret and Alvarius Research, among others, which are all Canadian-based entities.

26. In order to facilitate research with these compounds Panacea Plant Sciences and our partners sought to obtain written confirmation of what we knew which was that these items were legal for possession and research purposes from Health Canada and DEA in order to provide directly to US and Canadian Customs officials and others in order to

reduce timetable and potential for misunderstanding of compound identities and legality during shipments of these items from Canada to the United States or the United States to Canada.

27. Philippe Henry and Panacea had been in contact with Health Canada, some of that communication was provided to the DEA on December 31, 2021, in order to attempt to smooth over cross border collaboration and shipment of 4-OH-DiPT, 5-MeO-AMT, 5-MeO-MiPT, 5-MeO-DET and DiPT and other compounds. DEA responded without providing clarification on the status or any mention of a pending scheduling attempt and directed us to contact other DEA staff at the ODLP regarding the discussion and sent emails to Panacea Plant Sciences on January 4, January 7.

28. On January 14, 2022 the DEA filed the scheduling notice in the federal register and the scheduling process began for 4-OH-DiPT, 5-MeO-AMT, 5-MeO-MiPT, 5-MeO-DET and DiPT. https://www.federalregister.gov/documents/2022/01/14/2022-00713/schedules-of-controlled-substances-placement-of-4-hydroxy-nn.

29. On April 11, 2022 Defendant DEA issue a rule-making notice to move DOI and DOC into Schedule 1, which PPS challenged.

30. On June 30, 2022 DEA lawyer John Beerbower during an administrative law hearing said that the DEA administrator told him to violate ALJ Judge Teresa Wallbaum's orders regarding publishing of hearing dates for the 5 tryptamines case.

31. On July 6, 2022, DEA filed a notice for the public hearing for the 5 tryptamines for August 22, 2022.

32. On July 11, 2022, a status conference was held in which she told the DEA to answer for the claims that the DEA administrator may have broke APA or other laws. (Exhibit 2)

33. On July 19, 2022, the DEA removed Beerbower from the 5 tryptamine case and on July 21 DEA stated that Beerbower had agreed to a "transfer" out of the DEA to another DOJ location due to an arrangement made prior to the June 30 conference.

34. On July 21, 2022, PPS served the DEA and ALJ with a motion to dismiss and stop rulemaking due to APA violations and potential signs of tampering by DEA administrator Milgram.

35. On July 27, 2022, the DEA withdrew the rulemaking for the 5 tryptamines before an ALJ order could be drafted.

36. On August 29, 2022, DEA withdrew the rule-making for DOI/DOC.

37. On April 14, 2023 the Supreme Court ruled in Axon that administrative proceedings do not need to be completed before a challenge to the constitutionality may be made.

38. DEA filed new rulemaking to Schedule DOI and DOC on December 13, 2023.

39. DEA sends hearing notice for DOI/DOC on March 29, 2024.

40. DEA assigns Judge Soffling on April 1, 2024.

41. DH are currently in ongoing hearings regarding the DOI/DOC case.

42. The above provides background of the legal battles between DEA and DH, as well as illustrates past negative DEA administrator conduct which also shows attacks against DH and the company he owns stock in, PPS.

43. There are errors in the rulemaking process, in that the DEA did not consult with tribal governments as required under Executive Order 13175. The rulemaking references active Executive Order 13175 - Consultation and Coordination with Indian Tribal

Governments – however, it asserts that no such consultation with tribal governments is necessary, or as stated directly below:

*"This proposed rule does not have tribal implications warranting the application of <u>E.O. 13175</u>. It does not have substantial direct effects on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal Government and Indian tribes."*

This statement is incorrect as this rulemaking will change the status of a substance under federal law from Schedule 1 to Schedule 3 it will then as such require changes to tribal law enforcement, tribal health care via independent or Indian Health Services, and other programs. Reservations are regulated as federal lands and many tribal law codes reference federal law and the Controlled Substances Act. As such the current rulemaking will create a situation in which tribal governments and law enforcement will be required to train law enforcement on the new laws and this alone will impose direct costs on tribal entities and governments. Additionally, the costs of any enforcement of these new laws incurred from arrests, testing, jailing, etc. which falls on tribal governments again represent burdens and reasons for the DEA/Department of Justice to conduct a tribal consultation prior to rulemaking as is required under EO 13175. From the text:

*"To the extent practicable and permitted by law, no agency shall promulgate any regulation that has tribal implications, that imposes substantial direct compliance costs on Indian tribal governments, and that is not required by statute, unless:*

*(1) funds necessary to pay the direct costs incurred by the Indian tribal government or the tribe in complying with the regulation are provided by the Federal Government; or*

*(2) the agency, prior to the formal promulgation of the regulation,*
*(A) consulted with tribal officials early in the process of developing the proposed regulation;*

*(B) in a separately identified portion of the preamble to the regulation as it is to be issued in the **Federal Register**, provides to the Director of OMB a tribal summary impact statement, which consists of a description of the extent of the agency's prior consultation with tribal officials, a summary of the nature of their concerns and the agency's position supporting the need to issue the regulation, and a statement of the extent to which the concerns of tribal officials have been met; and*

*(C) makes available to the Director of OMB any written communications submitted to the agency by tribal officials."*

Additionally, under the current DOJ tribal consultation policy, the DEA and DOJ are tasked to not narrowly define when it is necessary to consult tribal governments, but to do so in a way that is widely encompassing and to err on the side of consulting, rather than not. From the DOJ's own tribal consultation policy:

*"The requirements of Executive Order 13175 and this Policy Statement generally will be*

*construed liberally in favor of Consultation on any given policy as defined above with Tribal implications. Consultations may be organized in a variety of ways, from a single group discussion to a more iterative process involving a series of discussions. All decisions regarding whether and how to conduct a Consultation, or whether a given policy or topic has Tribal implications, will be coordinated with the Department's Office of Tribal Justice."*

There are 574 federally recognized tribes and around *258 tribal law enforcement agencies.* That is a large amount of affected tribal entities and a large impact. As such I ask that the DEA withdraw the current rulemaking and begin the mandated tribal consultation process under EO 13175 and DOJ's own policy. The DOJ policy also requires notice at least 30 days before the date of consultation.

Additionally, 3 Native American organizations have submitted comment to the DOJ/DEA asking for tribal consultations. These include the Ho Chunk Nation, the Association of American Indian Affairs, and the Indigenous Cannabis Industry Association. (Exhibits 3,4,5)

As such DH requests the rulemaking at hand be: Withdrawn; and conduct tribal consultation which begins with a publication of notice seeking tribal input before rulemaking. The rule can be re-submitted for public comment and hearings after this is done.

44. The next issue at hand that must be dealt with is, the DEA's current rulemaking references the Regulatory Flexibility Act. Panacea Plant Sciences itself is a small business that qualifies under the Regulatory Flexibility Act to have consultation. PPS researches cannabis, does not have a DEA license, and has had to keep focus on hemp due to federal law, except when working with groups in other countries. Moving marijuana into schedule 3 from schedule 1, instead of de-scheduling will hurt give preferential treatment to those with DEA schedule 3 or other licenses. There are hundreds to thousands of hemp farms that would qualify under similar circumstances. There are also universities and other entities which would qualify. As such there is ample reason to follow the Regulatory Flexibility Act.

From the Regulatory Flexibility Act:
***"§ 602. Regulatory agenda***

*(a) During the months of October and April of each year, each agency shall publish in the Federal Register a regulatory flexibility agenda which shall contain —*

*(1) a brief description of the subject area of any rule which the agency expects to propose or promulgate which is likely to have a significant economic impact on a substantial number of small entities;*

*(2) a summary of the nature of any such rule under consideration for each subject area listed in the agenda pursuant to paragraph (1), the objectives and legal basis for the issuance of the rule, and an approximate schedule for completing action on any rule for which the agency has issued a general notice of proposed rulemaking, and*

*(3) the name and telephone number of an agency official knowledgeable concerning the items listed in paragraph (1).*

*(b) Each regulatory flexibility agenda shall be transmitted to the Chief Counsel for Advocacy of the Small Business Administration for comment, if any.*

*(c) Each agency shall endeavor to provide notice of each regulatory flexibility agenda to small entities or their representatives through direct notification or publication of the agenda in publications likely to be obtained by such small entities and shall invite comments upon each subject area on the agenda.*

*(d) Nothing in this section precludes an agency from considering or acting on any matter not included in a regulatory flexibility agenda, or requires an agency to consider or act on any matter listed in such agenda."*

45. This rulemaking was not included on the DOJ or DEA Regulatory Flexibility Agenda. The rulemaking withdrawn until this can be done.

46. Amendments to the Regulatory Flexibility Act in 1996 as part of the Small Business Regulatory Enforcement Fairness Act (SBREFA) (110 Stat. 857, 5 U.S.C. §601 note) permit judicial review regarding, among other things, agencies' regulatory flexibility analyses for final rules and any certifications that their rules will not have a significant impact on small entities. As a result, a small entity that is adversely affected or aggrieved by an agency's determination that its final rule would not have a significant impact on small entities could seek judicial review of that determination within one year of the date of the final agency action. In granting relief, a court may remand the rule to the agency or defer enforcement against small entities.

47. As such DH requests the rulemaking at hand be: Withdrawn; and hold a small business and entity consultation which begins with a publication to that end prior to rulemaking in 2024 and potential final rulemaking in 2025.

48. From 2021-2024(5) DH have been engaged in legal battles with the DEA and DOJ. These include instances in which records have shown what appears to be illegal and unconstitutional actions from the DEA administrator Anne Milgram. As such DH specifically asked for previous DEA hearings to be ended until she was no longer in the position as head of the agency. ALJ's similarly found concern with the DEA actions, which we will discuss in more detail later in the filing.

49. DH actions to increase public access of DEA actions and legal actions to stop DEA rule-making has created an obvious bias from the DEA administrator. The DEA administrator has now acted in ways that appear to punitively punish DH.

50. On May 21, 2024 Defendants DEA and DOJ issued a rule-making notice to move marijuana into Schedule 3 and requested public comment and requests for a hearing. DH submitted comments and requests for hearing before the deadline under the DEA and DOJ rule-making.

51. On August 29, 2022, DEA announced a public hearing for Dec. 2, 2024, and opened requests for hearing again with a deadline of September 30, 2024.

52. On September 16, 2024, DH each submitted requests for a hearing which outline each of the requirements from the DEA filing.

53. On October 28, 2024, DEA administrator Anne Milgram submitted a list of 25 people and organizations to be included in the hearing. This list of participants selected by Milgram did not include PPS or DH, but also didn't include a single Native American tribe, individual or organization, and additionally no group from a marginalized community. None of the selected individuals are challenging the DEA process under any of the named reasons that DH has. However, Milgram instead selected those without apparent standing.

54. On October 31, DEA Chief Administrative Law Judge sent an order to the 25 and the DEA saying that DEA did not follow the requirements for the hearing and ordering additional information to be provided including proof that the parties are harmed or aggrieved by the rule-making. (Exhibit 1)

55. As evidence shows DEA administrator kept qualifying participants with standing DH and PPS out of the DEA marijuana rule-making due to Milgram's attempt to punish a group she does not like, while including unqualified participants, the DEA hearings should be stayed and/or an injunction placed until DH and PPS are included.

56. The United States Supreme Court has found that an ALJ appointment process nearly identical to that used by DEA is unconstitutional. DEA, however, has done nothing to conform its ALJ appointment process to constitutional requirements. Moreover, statutory restrictions on an ALJ's removal violate the President's Article II executive power. DEA nonetheless seeks to compel PPS and DH to participate in an unconstitutional DEA administrative proceeding. DH seeks declaratory and injunctive relief to prevent the irreparable harm it would suffer if subjected to such an unconstitutional proceeding.

57. DEA ALJs are executive "officers" for purposes of Article II's Appointments Clause. They hold continuing positions, established by law, in which they exercise significant authority and discretion presiding over DEA administrative hearings and adjudicating adversarial proceedings.

58. Under the Appointments Clause, inferior Article II "officers" such as DEA's ALJs must be appointed either by the President or the Head of their Department, the Attorney General of the United States. U.S. Const. art. II, § 2, cl. 2. DEA ALJs, however, are appointed by neither. On information and belief, the DEA ALJ presiding over the administrative hearing was selected from a pool of candidates and appointed by the DEA Administrator upon recommendation from DEA's Chief ALJ.

59. In June 2018, the United States Supreme Court confirmed that this ALJ appointment process is unconstitutional in Lucia v. S.E.C., 138 S. Ct. 2044 (2018). Although the Court's decision specifically addressed the appointment of ALJs for the Securities and Exchange Commission ("SEC"), its reasoning equally applies to the appointment of DEA's ALJs. The Solicitor General explicitly acknowledged this fact in a memorandum addressed to all agency general counsels made public following the Supreme Court's decision in Lucia. In that memorandum, the Solicitor General stated that "SEC ALJs, and other ALJs who exercise similar powers, are inferior officers and must be appointed as such."

60. The framework for removal of DEA's ALJs is similarly unconstitutional. Article II vests "[t]he executive Power" in the President, including ultimate authority to remove officers to ensure that the law is "faithfully executed." U.S. Const. art. II, § 1, cl. 1; id. § 3. The

Supreme Court has held that, because the executive power is vested in the President, Article II requires inferior officers, such as ALJs, to be answerable to the President, and not separated from the President by attenuated chains of accountability. See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 492-98 (2010) ("Free Enterprise"). Statutory prohibitions found in Sections 7521(a) and 1202(d) of Title 5 of the United States Code prevent the President and Attorney General from removing DEA ALJs. Rather, they may be removed only for "good cause" as "determined" by the Merit Systems Protection Board ("MSPB"), whose members themselves can only be removed by the President on certain limited "good cause" grounds. This scheme—creating two layers of "for cause" protection between the President (or Attorney General) and his inferior officer ALJs—deprives the President (or Attorney General) from exercising his executive oversight duties and therefore is violates Article II. Id. at 492.

61. Under the Supreme Court's decision in Axon, DH are entitled to seek relief in a District Court now to address its constitutional challenges to avoid compounding the "here-and-now injury" from being subjected to this illegitimate proceeding—a harm that is "impossible to remedy once the proceeding is over, which is when appellate review kicks in." 598 U.S. at 192.

62. Amendments to the Regulatory Flexibility Act in 1996 as part of the Small Business Regulatory Enforcement Fairness Act (SBREFA) (110 Stat. 857, 5 U.S.C. §601 note) permit judicial review regarding, among other things, agencies' regulatory flexibility analyses for final rules and any certifications that their rules will not have a significant impact on small entities. As a result, a small entity that is adversely affected or aggrieved by an agency's determination that its final rule would not have a significant impact on small entities can seek judicial review of that. In granting relief, a court may remand the rule to the agency or defer enforcement against small entities. As a shareholder in PPS which is damaged by this rulemaking DH seeks review and ruling in his favor.

### Exhibits

1. DEA Administrator letters to DEA ALJ regarding marijuana rulemaking.

2. Transcript from a pretrial hearing during a DEA administrative law hearing on rule-making for DOI and DOC.
3. Comments from the Ho-Chunk Nation on DEA rulemaking requesting tribal consultation per Executive Order 13175.
4. Comments from Association of American Indian Affairs on DEA rulemaking requesting tribal consultation per Executive Order 13175.
5. Comments from the Indigenous Cannabis Industry Association on DEA rulemaking requesting tribal consultation per Executive Order 13175.

## CAUSES OF ACTION
## COUNT ONE
**(Application for Injunctive Relief)**

63. DH repeats and realleges each and every allegation in the statement of claim, as if fully set forth here.

64. Without injunctive relief from this Court, DH will be denied their right to testify at a public hearing on marijuana, as well as denied their rights under the RFA as a small business, and individual who conducts research and owns a portion of a small business to be consulted on rule-making. The RFA law enacted rights to protections and consultation as well as to be informed prior via the RFA agenda for DH. The DEA violated these rights. Executive order 13175 gives rights to Native American organizations to similarly be consulted which the DEA and DOJ violated. The DEA also violated DH and PPS rights to join the marijuana hearing as they followed all applicable rules to participate and DEA selected several participants which did not follow the requirements, as even the DEA ALJ admits in a recent filing.

65. DH seeks an injunction on the DEA administrative proceedings for marijuana, an injunction barring the Defendants from continuing rule-making to schedule marijuana and requiring the current rule-making to be rescinded/withdrawn, AND preliminary and

permanent injunctive relief barring Defendants from any rule-making on marijuana, so long as the issues surrounding the tribal consultations and RFA have not been rectified.

66. DH seeks an injunction on the DEA administrative proceedings for marijuana, an injunction barring the Defendants from continuing rule-making to schedule marijuana and requiring the current rule-making to be rescinded/withdrawn, AND preliminary and permanent injunctive relief barring Defendants from any rule-making on marijuana, so long as DH and PPS have been excluded from the DEA rule-making process proceedings.

67. DH seeks an injunction on the DEA administrative proceedings for marijuana, an injunction barring the Defendants from continuing rule-making to schedule marijuana and requiring the current rule-making to be rescinded/withdrawn, AND preliminary and permanent injunctive relief barring Defendants from administrative adjudicatory proceedings before any DEA ALJ, so long as the unconstitutional removal restrictions applicable to the ALJ have not been rectified.

## COUNT TWO
### (Declaratory Judgment)

68. DH repeats and realleges each and every allegation in the statement of claim, as if fully set forth here.

69. DH requests a declaratory judgment that the DEA and DOJ are in violation of EO 13175 on tribal consultation

70. DH requests a declaratory judgment that the DOJ and DEA are in violation of the Regulatory Flexibility Act and associated statutes due to the finding that there is no small business impact that requires complying with the RFA, not conducting required small organization consultations, and not following associated timelines and process for rule-making under RFA.

71. DH requests a declaratory judgment that the DOJ and DEA violated the rights of PPS and DH in barring their participation in the DEA and DOJ marijuana proceedings.

72. DH further requests a declaratory judgment that the statutes, regulatory provisions, and policies providing for the removal of DEA ALJs are unconstitutional as applied by DEA and DOJ.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Panacea Plant Sciences, Inc. respectfully requests that this Court enter judgment for DH on its claims and order the following relief:

A. Declarations that the statutes, regulatory provisions, and policies providing for removal of DEA ALJs are unconstitutional as applied by the DEA and DOJ; that the DEA and DOJ must conduct small organization/entity consultations and follow other RFA requirements and under marijuana rule-making did NOT follow them and so must withdraw the rulemaking; that the DEA and DOJ must conduct tribal/Native American consultations and follow related requirements and under marijuana rule-making did NOT follow them and so must withdraw the rulemaking; that the DEA and DOJ illegally blocked DH and PPS from participating in the marijuana rule-making and must be instated in the process;

B. An injunction against defendants barring any further administrative proceedings or scheduling attempts on marijuana, and staying any hearings or deadlines in the administrative proceedings until this case is heard;

C. Preliminary injunctive relief requiring defendants to issue a stay in the administrative proceedings;

D. DH seeks preliminary and injunctive relief on the DEA administrative proceedings for marijuana, an injunction barring the Defendants from continuing rule-making to schedule marijuana and requiring the current rule-making to be rescinded/withdrawn, AND preliminary and permanent injunctive relief barring Defendants from any rule-making on

marijuana, so long as the issues surrounding the tribal consultations and RFA have not been rectified.

E. DH seeks preliminary and injunctive relief on the DEA administrative proceedings for marijuana, an injunction barring the Defendants from continuing rule-making to schedule marijuana and requiring the current rule-making to be rescinded/withdrawn, AND preliminary and permanent injunctive relief barring Defendants from any rule-making on marijuana, so long as the issues surrounding barring of DH and PPS from the hearings have been rectified.

F. Preliminary and permanent injunctive relief barring Defendants from administrative adjudicatory or regulatory proceedings before any DEA ALJ, so long as the unconstitutional removal restrictions applicable to the ALJ have not been rectified;

G. Injunctive relief barring Defendants from continuing rule-making to schedule marijuana and requiring the current rule-making to be rescinded/withdrawn; and

H. Such further and other relief as this Court may deem just and proper.

Date: November 4, 2024                    Respectfully submitted,

_____
David Heldreth
dheldrethjr@gmail.com
14321 SE 49th St.
Bellevue, WA 98006